UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| YOLANDA WAGNER o/b/o J.D.W. | CIVIL ACTION NO. 07-1026 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

*Background*

On April 26, 2005, Yolanda Wagner ("Wagner") filed an application for supplemental security income benefits on behalf of her son, Jordan, now age 10, alleging disability due to Attention Deficit Hyperactivity Disorder ("ADHD"), hypertension, and obesity. Jordan's application was denied on initial review, and an administrative hearing was held on December 18, 2006.[1] In an opinion dated February 22, 2007, the ALJ denied benefits on grounds that Jordan did not have a disabling impairment.[2] The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Wagner now appeals.

*Standard of Review*

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th

---

[1] Tr. 210-236.

[2] Tr. 9-16.

Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is "...more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  Id.

*Childhood Disability Benefits*

An individual under age 18 may be found disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §1382c(a)(3)(C)(i).

The regulations provide a three-step sequential evaluation process for determining whether a child's impairments result in "marked and severe limitations."  First, if the child is engaging in "substantial gainful activity," the child will be found not disabled regardless of medical condition or age, education, or work experience.  20 C.F.R. §416.924(b).  Second, the child must have a severe impairment or impairments.  If the child suffers from a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will be considered to have no severe impairment, and therefore to be not disabled.  Title 20 C.F.R. §416.924(c).  Third, the child will be considered disabled if his or her impairment(s) meet, medically equal, or functionally equal in severity a listed impairment

in Appendix 1 of Subpart P of Part 404 of the chapter. If a child's impairments do not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are disabling. 20 C.F.R. §§ 416.926a (functional equivalence for children). *See*, *e.g.*, Luckerson v. Apfel, 2000 WL 1222125 (N.D. Ill. Aug. 22, 2000).

### *ALJ's Decision*

The ALJ found that Jordan suffers from three severe impairments: ADHD, obesity, and hypertension.[3] The ALJ concluded, however, that Jordan's impairments do not meet, medically equal, or functionally equal the criteria of any of the Appendix I Listings.

### *Assignment of Errors*

Wagner alleges that the ALJ erred in finding that Jordan's condition did not meet or functionally equal a listed impairment in Appendix 1.

### *Findings and Conclusion*

#### I. Administrative Record

Jordan is a ten year-old boy who is obese.[4] When he was six years old, Jordan was 48 inches tall, weighed 110 pounds, and was diagnosed with hypertension.[5] By the time he was eight years old, Jordan weighed 178 pounds, and had undergone adenotonsillectomy due to sleep

---

[3] Tr. 13.

[4] Tr. 154.

[5] Tr. 132, 189.

4

apnea.[6] Jordan has been followed by Dr. Albert Gutierrez, a pediatric cardiologist, who has monitored Jordan's hypertension and prescribed Vasotec to treat it.[7]

In September, 2004, at age 6, Jordan was diagnosed with ADHD.[8] Jordan was inattentive, did not follow directions, and had behavior problems in school. Jordan was prescribed Metadate to treat ADHD.[9]

On April 20, 2005, Jordan's first grade teacher noted:

Jordan lacks self-control. He must be called to attention often and reminded of the classroom/lunchroom rules. He does not respond well when he is reprimanded (he pouts and carries on). Please note that his academic grades are fantastic but he requires a lot of prompting to behave.[10]

In May, 2005, his teacher noted that he had developed a sense of self-discipline and had matured a great deal.[11] The teacher reported that after a "gentle reminder to behave," Jordan "thinks about his behavior and then behaves appropriately."[12]

On May 12, 2005, Alison Broussard, a school-based speech therapist, noted that Jordan had been receiving speech therapy for four years and had made "excellent progress."[13]

---

[6] Tr. 169.

[7] Tr. 154-159, 179-182.

[8] Tr. 150.

[9] Tr. 223.

[10] Tr. 146.

[11] Tr. 87, 91.

[12] Tr. 87.

[13] Tr. 83.

5

Ms. Broussard noted that Jordan was completely intelligible, and his language disorder did not affect his ability to learn.

Jordan's third-grade teacher, Ms. Pat Francis, noted Jordan's academic successes, and reported that he worked independently, and his attendance and ability to complete tasks were good.[14] Ms. Francis noted, that Jordan did not react well to change, and when stressed, he suddenly groans. Jordan sometimes slapped himself during class. Ms. Francis noted that Jordan, "Occasionally bumps into others, defends himself if they react."[15]

In November, 2006, Jordan's teacher noted Jordan's "creative mind" and his strong academic performance, especially in science.[16] It was also noted that Jordan "loves to read; loves to learn."[17] Jordan's classroom teacher and P.E. teacher recognized some deficits in Jordan's physical abilities and referred him for A.P.E. (adapted physical education) screening.[18]

The school counselor, Jessica Donaho, reported on December 18, 2006 that Jordan was referred to her due to temper outbursts and fighting with other children.[19] Jordan meets with Ms. Donaho bi-weekly for behavior modification and anger management skills. Ms. Donaho noted that, "Jordan does well in the counseling sessions but is having trouble putting skills into action in his daily life."[20]

---

[14] Tr. 101.

[15] Tr. 101.

[16] Tr. 103.

[17] Tr. 103.

[18] Tr. 104.

[19] Tr. 111.

[20] Tr. 111.

6

The most recent medical records note that in October, 2006, Jordan was having tantrums and outbursts.[21]  Dr. Sarah Laurente, a pediatrician, diagnosed depression, as well as continued ADHD.  Jordan's medication was switched to Strattera, for treatment of both depression and ADHD.

## II.  Appendix I Impairment

Wagner contends that Jordan's impairments meet or functionally equal the requirements of 20 C.F.R. Pt. 404, Subpart P, App. 1 § 112.11 regarding ADHD.

Wagner does not provide support for the contention that Jordan meets the requirements of Listing 112.11.  The Listing requires marked inattention, impulsiveness, and hyperactivity, in addition to marked difficulties in keeping pace or impairment in cognitive, social, or personal functioning.  Although Jordan does have problems in these areas he does not have marked limitations in all of the necessary areas.[22]

---

[21] Tr. 185.

[22] Listing 112.11 provides:
> *Attention Deficit Hyperactivity Disorder*: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
> A. Medically documented findings of all three of the following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;
> AND
> B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.
>
> Paragraph B2 of § 112.02 provides:
> For children (age 3 to attainment of age 18), resulting in at least two of the following:
> a.  Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

7

Likewise, Jordan does not functionally equal the Listing. A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two of the following six domains, or an extreme limitation in one domain:

    (i)      Acquiring and using information;
    (ii)     Attending and completing tasks;
    (iii)    Interacting and relating with others;
    (iv)    Moving about and manipulating objects;
    (v)     Caring for yourself; and,
    (vi)    Health and physical well-being.

Title 20 C.F.R. § 416.926a(b)(1)(i-vi).

A "marked" limitation in a domain means an impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(2)(i).[23] A "marked" limitation is "more than moderate" but "less than extreme." Id. An "extreme" limitation will be found when an impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" within a domain. 20 C.F.R.

---

    b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

    c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

    d. Marked difficulties in maintaining concentration, persistence, or pace.

[23] Title 20 C.F.R. §416.926(e)(2)(i) states as follows:
    **(2) Marked limitation.**
    (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

8

§416.926a(e)(3).[24] An extreme limitation is "more than marked," but "does not necessarily mean a total lack or loss of ability to function." Id. Day-to-day functioning is considered to be seriously limited regardless of whether the impairment limits only one activity within a domain, or several.

>  With respect to the domains, the ALJ concluded:
>
>  Based on the evidence of record and testimony at the hearing, the undersigned finds that the claimant has less than marked limitation in the area of Attending and Completing Tasks. The claimant was observed as a very bright and articulate child, whose speech was completely intelligible when testifying at the hearing. He has been diagnosed with attention deficit hyperactivity disorder and takes Strattera for this impairment. He stated he liked school and makes good grades. The claimant also has a less than marked limitation in the domain of Health and Physical Well-Being. He has been diagnosed with a history of systemic hypertension and obesity. He takes Vasotec for blood pressure control. However, these impairments have not resulted in any physical limitations. The child has no limitations in the domains of Acquiring and Using Information, Interacting and Relating with Others, Moving About and Manipulating Objects, or Caring for Yourself.[25]

The record supports the ALJ's findings. Although Jordan struggles occasionally in some areas, such as paying attention or maintaining proper behavior in class, he does not have a marked impairment.[26] Despite his ADD, Jordan has demonstrated strong academic performance,

---

[24] Title 20 C.F.R. §416.926(e)(3)(i) states as follows:
   **(3) Extreme limitation.**
   (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

[25] Tr. 15.

[26] Tr. 146.

9

especially in science and reading, and makes straight A's at times. Clearly, a child with exceptionally good grades does not have an impairment in acquiring and using information, and attending and completing tasks.

Although the record shows that Jordan occasionally has difficulty interacting with others, and sometimes gets teased and fights with classmates, Jordan has not received any disciplinary actions, such as detention or suspension, nor have his teachers noted any significant limitation in his ability to interact with others.

Similarly, although Jordan has some problems getting into his desk and catching balls, he has not, aside from being referred for possible placement in adapted physical education, had any limitation in his ability to move about and manipulate objects.

Moreover, Jordan has made "excellent progress" in speech therapy, with his speech being completely intelligible. He has hypertension and obesity, however these impairments do not pose physical limitations. Thus, he does not have a marked impairment in health and physical well-being. Additionally, there was no allegation that Jordan has any problem with caring for himself.

As discussed above, an impairment functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain. The record clearly shows that Jordan does not have marked impairment in any area. Jordan is a successful student, with his third-grade teacher describing his communication skills as "Good expression/mature conversation and understanding."[27] Further, the record shows that he is a child who loves to learn and read. He earns high grades and his teachers did not report that he presented any

---

[27] Tr. 101.

significant behavioral problems in class.  The ALJ's conclusion that he is not disabled, therefore, is supported by substantial evidence.

## *Conclusion*

For the foregoing reasons, the undersigned concludes that the ALJ's decision is supported by substantial evidence, and recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on July 3, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)